# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| H. E. SCOBEE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 05-488-BH-B |
| POINT CLEAR HOLDINGS, INC., ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT; CONCLUSIONS OF LAW
## AND ORDER

This action is before the Court on the parties cross-motions for summary judgment (Docs. 84-87 and 89-91). Upon consideration of these motions, the parties' respective responses in opposition thereto (Docs. 96 and 97) and replies (Docs. 100-102), together with all pertinent portions of the record, the Courts concludes plaintiffs' motion is due to be granted while defendant's motion is due to be denied in all but one respect.

## FINDINGS OF FACT

Upon consideration of all the evidence proffered in this case, both documentary and testimonial, the Court finds that the following facts are either undisputed or uncontradicted by the parties:

1. H. E. and Dorothy Scobee are the owners of lot 3 and Hank and Paula Perkins are the owners of lot 11, in a subdivision in Baldwin County, Alabama known as Lakewood Club Estates Unit Two ("Subdivision"). Plaintiffs' Motion at Exh. 1 and 2. There are 14 lots in this Subdivision. Exh. 3. The owners of the other 12 lots have

consented to be bound by the judgment in this case. *See*, Doc. 67.  The lots in the Subdivision are adjacent to Pine Grove Drive, which is private street within the Subdivision in which the lot owners were granted an easement. Exh. 3 and 4.

      2.      The Subdivision was created by Grand Hotel Development Corporation ("GHDC") by the recording of the plat and restrictive covenants in Baldwin County, on or about July 2, 1962. Exh. 3 and 4.

      3.      Defendant, Point Clear Holdings, Inc. ("PCH"), is a successor in interest to GHDC.  PCH owns and operates the Grand Hotel and golf courses around which the Lakewood subdivisions, including the Subdivision here at issue, have been developed. PCH owns the fee in Pine Grove Drive, subject to the rights of Plaintiffs and the limitations which GHDC placed on itself and its successors. Exh. 5.

      4.      PCH acknowledges that the plaintiffs brought this lawsuit as a result of a proposed development to what is known as the "Pate" property and that this property was not originally part of Lakewood Club Estates or the surrounding Grand Hotel properties. PCH Brief in Opposition (Doc. 97) at 1-2.  The Pate property is located adjacent to Lakewood Club Estates and The Grand Hotel properties. *Id.*  The proposed development of the Pate property at the time this lawsuit was initiated involved connecting the

development to Pinegrove Drive by way of a new road known as the "Bru" connector.[1]

*Id.*

    5.    The Covenants for the Subdivision provide, in relevant part:

    A-7.    Easements. The easement shown on the plat of said subdivision are hereby adopted as part of these restrictions, and all lots in said subdivision shall be subject to said easements. Grand Hotel reserve unto itself, its successors and assigns, the right to grant unto others easements to install, maintain, repair, and construct power, water, gas, and telephone lines and facilities and drainage ditches, in, on, over and under the areas, or any of the areas designated on said plat as "private easement" or "planting strip" or "planting area."

    A-8.    Street Easements. The street easements shown on the plat of the subdivision has been designated as private easements for streets and/or for the use and benefit of the owner of any lot in the subdivision or Grand Hotel, and guests, invitees and employees of the owner of any lot in the subdivision or Grand Hotel, and other members of the public who have business to conduct with the owner of any lot in the subdivision, or Grand Hotel; and Grand Hotel reserves the right at any time to dedicate said streets to the public, but neither the recording of a plat nor any act of Grand Hotel shall be construed as a dedication of said streets to the public unless Grand Hotel shall execute and record in the Probate Court of Baldwin County, Alabama, a right-of-way deed or other documents conveying to the proper authority and easement for the benefit of the public in said streets.

    A-11    Trade or Business Prohibited. No part of the property shall be used for any purpose of business, manufacturing or trade, and

---

[1] PCH now contends that "[d]ue to market considerations and other factors, including this litigation, [PCH} has decided not to move forward with the "Bru" connector." PCH Response (Doc. 97) at 3.  It is clear, however, that PCH continues to assert its right to dedicate Pinegrove Drive as a public road if it otherwise desires to do so.  The issue is not, therefore moot.

>  no building erected thereon may be used for the purpose of operating a boarding house, or serving of meals or refreshments to the public, nor shall the operation of a tea room or similar establishment, be permitted therein. The enumeration of particular operations prohibited shall not be construed to permit any others prohibited herein by general terms.
>
> . . . .
>
> C-10   Amendment, Modification and Annulment. Any or all of the covenants and restrictions heretofore provided may be amended, modified or annulled at any time by an instrument executed by the owner or owners, as the case may be, of seventy-five (75%) percent of the lots of the subdivision, said lots being shown on the plat of the subdivision recorded in Map Book 5, Page 198, with the records in the Office of the Probate Judge of Baldwin County, Alabama; PROVIDED, HOWEVER, no amendment which places an additional burden or restriction on lots in said subdivision shall bind any lot, the owner of which does not join in said amendment.

Additionally, the plat for the Subdivision provides: "All roads, streets, drives, and avenues are private easements not dedicated for public use and are subject to the restrictive covenants. All planting strips and planting areas are to remain the property of Grand Hotel Development Corp. for such purpose as Grand Hotel Development Corp. may determine." Exh. 3 and 4.

  6. One of the issues in this case is whether PCH, as the successor to GHDC in fee ownership of Pine Grove Drive, has the right to dedicate Pine Grove Drive to the public. The Court finds that under the express terms of the covenants the right to change Pine Grove Drive from a private street to a public street through dedication was reserved

only to GHDC itself, and was withheld from its successors and assigns. Ex. 4, ¶¶ A-7 and A-8.

    7.    At the time the Subdivision was developed, GHDC did not own the 174 acre parcel known as the "Pate property." In 1962, the majority of that property, approximately 156 acres, was owned by Dr. H. C. Jordan, and a smaller portion, approximately 16 acres, by Duncan and Alice Turnbull. Exh. 11.1, 11.2, 12 and 13. There was, therefore, no contemplation by the parties in 1962 of any development of the "Pate property."

    8.    The Pate property is now owned by Point Clear Partners, LLC ("PCP"), which has plans to develop the Pate property ranging from the minimum of a 628 condominium complex to a 1600 unit mixed use development. Exhibits 7, 8, 9, 10, and 11. One issue in this case is whether PCH may grant to PCP, or the ultimate purchasers/users on the Pate property, an easement or other rights of use in Pine Grove Drive in connection with the development of the Pate property. Consistent with the conclusions of law below, the Court finds that PCH may not use or grant rights of use in connection with the development on the Pate property. That property was not owned by GHDC when the Subdivision was developed in 1962 and therefore, despite PCH's pure speculation to the contrary, it could not have been within the contemplation of the parties that the use of Pine Grove Drive could be extended to such property.

    9.    The Court is familiar with the subdivisions which have been developed in the Lakewood area, including the Subdivision at issue. The vast majority of these

developments are comprised of single family dwellings on large lots situated on private streets near the golf courses. *See also,* Exs. 3, 4, 13, and 15. There are two small condominium complexes within Lakewood, however, these contain only a small number of units all of which are one story units. There has never been any multi-storied, high density housing development in the Lakewood subdivisions.

      10.    When the Subdivision was developed, Pine Grove Drive was a dead end street and so remained even after Unit Six of Lakewood was developed. Exh. 3 and 15. Even after the development of Unit Six, Pine Grove Drive remained a dead end street through the placement of a gate at the terminus of Pine Grove Drive. *Id.*; Deposition of Bob Callahan at 35-37.

      11.    During the 45 years of its existence Pine Grove Drive has had only private use and even that use has been very limited. Other than use by the lot owners, the only other use of any significance has been use by PCH, or its predecessors, as the owner and operator of the Grand Hotel and golf courses. That use too has been limited and includes: employees of PCH using golf course maintenance equipment; employees of PCH and members of the golf club using golf carts on the western end of Pine Grove Drive traveling between the club house and driving range/maintenance shed; and pedestrians, bicyclists, and joggers from the Grand Hotel. Deposition of Mary Alice Taylor, pp. 11-16; deposition of Bob Callahan, pp. 55-64; Plaintiffs' Responses to PCH's Interrogatories, no. 16.  There may have been other occasional use the street, such as

other people taking walks or lot owners in Units One or Six, however, such use has been infrequent and was permissive in nature and has no impact on the result in this case. *Id.*

12.  When the various units of Lakewood were developed, the purchasers in those units were not granted the right to use Pine Grove Drive, nor were the lot owners in the Subdivision granted the right to use the private streets in the other units. Exh. 3, 4, 14, and 15.  Deposition of Mary Alice Taylor, pp. 65-66; deposition of Bob Callahan, pp. 36-38.  Moreover, when one of PCH's predecessors, Potomac Hotel Limited Partnership, sold the land on which Unit Six was developed to Magnolia Trace, Inc., it did not grant any right for Magnolia Trace or the lot purchasers in Unit Six to use Pine Grove Drive. Exh. 16.

13.  Also at issue in the case are the rights of use PCH has in Pine Grove Drive. The Court finds that PCH's rights are limited to those which have historically been made by PCH, or its predecessors, as the owner and operator of the Grand Hotel and golf courses.  Such uses are set forth in paragraph 11 above.

14.  The development contemplated by PCP included (in addition to the Pate property) the acquisition of up to 5 parcels from PCH located in and around the golf courses and existing Lakewood subdivisions. Exh. 8, 9, 10, and 11.  It was further contemplated that some of those parcels could be developed with high-density housing, including "high-density residential towers." Exh. 8 and 11.

15.  The Court further finds that PCH may not use or grant rights to use Pine

Grove Drive in connection with further development in the Lakewood property. Use of Pine Grove Drive in connection with such development, including even other single family housing, would be inconsistent with the intent expressed in the covenants and confirmed by the development of the other units in Lakewood. As already discussed, as the various units in the Lakewood subdivisions were developed the lot purchasers in other units were not granted the rights to use Pine Grove Drive. In short, Pine Grove Drive was intended to be a private street for the use and benefit of only the lot owners in Unit Two, and only by GHDC (or its successors) as owners and operators of a golf course in the limited manner as described above.

16.     The evidence shows that the development plans of PCH and PCP are somewhat in flux. *See* PCH's Responses to Plaintiffs' Second Set of Interrogatories. Nevertheless, the evidence shows the range of development on the Pate property, and potentially the five smaller parcels around the existing Lakewood subdivisions, which give rise to the dispute in this action. When this action was filed the development contemplated was known as Battles Landing at Point Clear. The approval for that subdivision was granted by the Baldwin County Planning and Zoning Commission to the then developer, Polo Development, LLC. Exh. 7. The Battles Landing development would be comprised of 628 condominium units with 1391 associated parking spaces. Exh. 7, Sheet 3 (informational plan). A memorandum traffic study for Battles Landing, prepared on behalf of PCP, indicates that such development would generate approximately 3,700 trips daily. Exh. 8.2. The larger development proposed by PCP,

known as the Colony at the Grand, a planned unit development ("Colony"), would be developed on the Pate property, five smaller parcels within the existing Lakewood property, and other property generally situated north of the Pate property.  The Colony development would include 1600 housing units, including high-density, medium-density, and some single family, and commercial development. Exh. 8, 9, 10, and 11.  It is also contemplated that several hundred memberships in the Lakewood golf club (for the golf courses and other facilities owned by PCH) would be granted to purchasers in the Colony and that a rental pool for condominiums may be established.  Ex. 10.  The traffic study for the Colony documents an expected 8,800 trips daily.  Exh. 8.1.  Although the exact proportion of the nearly 4,000 to 9,000 trips generated daily by the developments that would involve travel on Pine Grove Drive is not known, given the contemplated integration of the properties and facilities of PCH and PCP as reflected in Exh. 8, 9, 10, and 11, it is reasonable to infer that the use of Pine Grove Drive would be exponentially increased if use thereof is permitted in connection with the development.

   15. Although the Court has already found that PCH cannot use or grant rights to use Pine Grove Drive in connection with the development on the Pate property, because that property was not owned by GHDC at the time the Subdivision was created, the Court further finds that any such use would clearly conflict with the purpose and character Pine Grove Drive.  The Court has already detailed the historical uses of Pine Grove Drive and has noted that not even the lot owners in the other units of Lakewood Club Estates, on which primarily detached, single family residences have been constructed, were granted

the rights to use Pine Grove Drive.  There has never been any high-density development in the Lakewood subdivision.  Based on the language of the covenants, the history of the development of the Lakewood subdivisions and the historical use of Pine Grove Drive as shown by the evidence, the Court finds that the use of Pine Grove Drive in connection with the high-density development proposed by PCP would be inconsistent with the purpose and character of the easement.  The Court is aware that as a general proposition an increase in use does not necessarily change the character of the easement.  However, here the amount of use is expected to increase from the owners of 14 lots and PCH as the owner and operator of the Grand Hotel, to use by nearly 1400 vehicles if the smaller Battles Landing development is constructed, and potentially as many as thousands of vehicles if the Colony PUD is developed. Exh. 7, 8, 8.1, 8.2, 9, 10, and 11. Moreover, the integration of ownership and operation of PCH's property and PCP's property, including the granting of club memberships to persons purchasing units or lots on the Pate property and the establishment of a rental pool, and then the use of Pine Grove Drive in connection with such operations is clearly inconsistent with the purpose and character of the easement established in Pine Grove Drive in 1962. Exh. 3, 4, 7, 8, 8.1, 8.2, 9, 10, and 11.

## CONCLUSIONS OF LAW

1.     Restrictive covenants are a contract between the developer of a subdivision and the lot purchasers.  *Schmidt v. Ladner Construction Co.*, 370 So. 2d 970, 973 (Ala. 1979); *Vaughan v. Fuller*, 278 Ala. 25, 29 (1965).  The "paramount rule is to expound

[covenants] as to give effect to the actual intent of the parties." *White v. Harrison*, 202 Ala. 623, 624 (1919). To the extent there is ambiguity in restrictive covenants, the circumstances existing at the time the subdivision was created and the subsequent acts of the parties may be considered. *Kennedy v. Henley*, 293 Ala. 657 (1975). "It is axiomatic that an ambiguity in a restrictive covenant, as in contracts generally, is to be construed against the drafter." *Schmidt*, 370 So. 2d at 973. *Accord*, *Vaughan*, 278 Ala. at 29 (ambiguity in restrictive covenants to be construed against developer).

      2.     In this case, the restrictive covenants unambiguously show that the right to change Pine Grove Drive from a private street to a public road was reserved only to GHDC, and not to its successors. The Court concludes that GHDC intended to contract away the right of its successors in the fee ownership of Pine Grove Drive to dedicate that private street to the public. That intent is unequivocally evidenced by comparing the provisions in paragraphs A-7 and A-8 of the covenants. In paragraph A-7, reserving the right to grant easements for utilities, GHDC specifically reserved to itself and its successors and assigns the right to grant such easements. However, in the very next paragraph of the covenants GHDC reserved only to itself, and not to its successors and assigns, the right to dedicate the private street to the public. Moreover, even assuming there was ambiguity, that ambiguity would be construed against PCH as the successor to GHDC.

      3.     PHC argues that "[a]s fee owner of Pinegrove Drive, [PHC] maintains the right to dedicate the fee to the public." Response (Doc. 97) at 9. However, it is

abundantly clear that the plaintiffs and the other lot owners own the "dominant" estate, while PCH owns the "servient" estate. PCH's predecessor, GHDC, chose to create these relations when it developed Lakewood Club Estates Unit Two. The Court agrees that the fact that "market conditions" as perceived by PCH have given rise to PCH's desire to integrate its commercial operations with the Pate property being developed by PCP does not allow PCP to disregard plaintiffs' rights and the limitations on PCH's rights established by GHDC.

4.  Under Alabama law, "the use of [an] easement by owners of property other than a subdivision of the dominant tenement, even property acquired by the dominant tenement owner after creation of the servitude, overburdens the easement as a matter of law." *Weeks v. Wolf Creek Industries*, 941 So. 2d 263, 272 (Ala. 2006). *See also Roberts v. Monroe*, 261 Ala. 569, 577 (1954) ("a grant or reservation of a right to pass upon a private way to one lot does not confer the right to pass upon the same way to another lot."). The law in other jurisdictions is to the same effect: *Smith v. Combs*, 554 S.W.2d 412, 414 (Ky. App. 1977) ("extending the use of a [private] roadway easement to land not part of the original tract constitutes an unreasonable burden . . . ."); *Leffingwell Ranch, Inc., v. Cieri*, 916 P.2d 751, 758 (Mont. 1996) (developers who held easements on certain lands could not use such easement to access 174 lots being developed on land which was not owned by developers' predecessors when the easement was created because "such extension would constitute an unreasonable increase of the burden of the servient tenement."); *Mancini v. Bard*, 364 N.E.2d 1313 (Ct. App. N.Y. 1977) (plaintiffs' status as

owner of dominant estate and common owner of servient estate did not permit use of easement to benefit land subsequently acquired by plaintiffs); *Pion v. Dwight*, 417 N.E.2d 20, 23 (Mass. App. 1981) (interpreting easement reserved by grantor to benefit all parcels owned by her at the time the easement was granted); *Lovin v. Crisp*, 243 S.E.2d 406, 409-10 (N.C. App. 1978) (rejecting as irrational defendants' interpretation that easement for water rights was for benefit of lands obtained by defendants in the deed creating the easement and all after acquired land, as such construction would render the rights granted under the deed indeterminate). Under these authorities, and in accordance with the findings of fact made above, the Court concludes that PCH may not use or grant rights of use in Pine Grove Drive in connection with the development of the Pate property. The Court finds that when the Subdivision was created in 1962 it simply was not contemplated that use of Pine Grove Drive would ever be extended to property not then owned by GHDC. Extending the use of Pine Grove Drive to the Pate property which was not owned by GHDC when the Subdivision was developed, is deemed unreasonable as a matter of law. Moreover, consistent with the above authorities, the Court cannot interpret these covenants to be a reservation by GHDC to engraft onto this private road indeterminate uses from an indeterminate amount of land which GHDC or its predecessors may acquire in the future.

5.    Although the owner of a servient estate, such as PCH, may make reasonable use of the easement, such use "must not conflict with the purpose and character of the easement" granted to the dominant estate owners. *Duke v. Pine Crest Homes, Inc.*, 358

So. 2d 148, 150 (Ala. 1978). Consistent with the findings of fact above, the Court concludes that the use of Pine Grove Drive in connection with development of the Pate property would be utterly inconsistent with the purpose and character of this private street.

  6. Nor can PCH use or grant rights of use in Pine Grove Drive in connection with the development of property around the existing Lakewood subdivisions, such as the five smaller parcels which were to be included in the Colony PUD.  As discussed in the findings of fact above, when the various units of the Lakewood subdivisions were developed the purchasers of lots in those units were not granted the right to use Pine Grove Drive, nor were the lot owners in the Subdivision granted the right to use the private streets in the other units.  Additionally, when PCH's predecessor, Potomac Hotel Limited Partnership, sold the land on which Unit Six was developed, it did not grant any right for the developer or the lot purchasers in Unit Six to use Pine Grove Drive (or the private streets in other Lakewood subdivisions).  Given the language in the covenants, the circumstances in which the subdivisions were developed, and the historical use of Pine Grove Drive, the Court finds that the purpose of the easement was to be a private road for use by the owners of the 14 lots and GHDC (any its successors) as the owner and operator of the Grand Hotel and golf courses to the limited extent shown by the history of use.

  7. The Court does find that PCH has the right to use Pine Grove Drive as the fee owner in connection with the ownership and operation of the golf courses in the manner and frequency of such historical use.  This is limited to use by PCH's employees

(or contractors) using golf course maintenance equipment for the purpose of maintaining the golf courses; use by PCH's employees and members of the golf club operating golf carts on the western end of pine Grove Drive traveling between the club house and existing driving range/maintenance shed; and permitting guests staying at the Grand Hotel to walk, bicycle, and jog for recreation.  To the extent the amendment to the covenants adopted by the lot owners on April 7, 2005, purports to restrict such use, the same will be declared to be invalid.

## CONCLUSION AND ORDER

For the reasons stated above, the Court concludes and it is therefore **ORDERED** that plaintiffs' motion for summary judgment is due to be and is hereby **GRANTED** in that it is hereby declared that PCH has no right to dedicate Pine Grove Drive to the public; that PCH cannot use Pine Grove Drive in connection with the development of the Pate property, or grant rights of use in Pine Grove Drive to the developer or ultimate purchasers/renters on the Pate property; and that PCH may not use or grant rights to use Pine Grove Drive in connection with any further development within the Lakewood property; but that PCH does have the right to use Pine Grove Drive in connection with the ownership and operation of the golf courses, to-wit, employees operating golf course maintenance equipment; employees and guest of the club operating golf carts between the clubhouse and the existing driving range/maintenance facilities; employees working or contractors/vendors conducting business at the driving range/maintenance shed; and pedestrians, joggers, and bicyclists who are staying at the Grand Hotel.  It is **FURTHER**

**ORDERED** that defendant's motion for summary judgment is due to be and is hereby **DENIED** except to the extent that it is hereby declared that the amendment to the covenants adopted by the lot owners on April 7, 2005, is hereby declared void to the extent the amendments purport to limit the use of Pine Grove Drive by PCH and guests of the Grand Hotel as set forth above.  Judgment shall be entered accordingly.

**DONE** this 17th  day of July, 2008.

s/ W. B. Hand
SENIOR DISTRICT JUDGE
